UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY D. GOUCHER, JR., <br><br> Plaintiff, <br><br> v. <br><br> CAROLYN W. COLVIN, Acting Commissioner, Social Security, <br><br> Defendant. <br> _____/ | No. C-14-3009 EMC <br><br> **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT; AND REMANDING CASE FOR FURTHER ADMINISTRATIVE PROCEEDINGS** <br><br> **(Docket Nos. 18, 22)** |

Plaintiff Jerry D. Goucher seeks review of the Commissioner's final decision denying his application for disability insurance benefits. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). Mr. Goucher seeks an order reversing the decision and granting payment of benefits or remanding for further proceedings. Defendant Carolyn W. Colvin in her capacity as Commissioner of the Social Security Administration ("the Administration") opposes the motion and cross-moves for summary judgment. Having considered the parties' briefs and accompanying submissions, the Court hereby **GRANTS** Mr. Goucher's motion and **DENIES** the Commissioner's cross-motion.

## I.   FACTUAL & PROCEDURAL BACKGROUND

A.   Mr. Goucher's Application for Social Security Disability

On May 10, 2011, Mr. Goucher filed a Title II application for a period of disability and disability insurance benefits based on his (1) degenerative back and joint diseases; (2) shoulder impairment; (3) morbid obesity; (4) sleep apnea; and (5) borderline diabetes mellitus. Administrative Record ("AR") 16. In his application, Mr. Goucher stated that his disability began

on August 7, 2007. *Id.* At the hearing, he amended his alleged onset date to October 27, 2009. AR 12. These claims were denied on June 15, 2011 (AR 93–96), and again on reconsideration on August 10, 2011. AR 98–102. Mr. Goucher then sought a hearing before an administrative law judge ("ALJ"). AR 104–05.

A hearing was held before ALJ Caroline H. Beers on June 19, 2012, and then again on November 30, 2012. AR 25–65. Mr. Goucher appeared and testified at the hearings. *Id.* Also appearing and testifying were Mary Ciddio and Jeff Clark, vocational experts. *Id.* Mr. Goucher was represented by counsel at the hearing. *Id.*

At the hearings, Mr. Goucher testified about his daily activities. Mr. Goucher indicated that he drives his car about a mile everyday and is capable of taking public transportation. AR 47–48. Mr. Goucher also takes care of his dog by feeding it, cleaning up after it using a grab bar, and taking it to the park – where he sits on a bench every day for an hour. AR 47–48, 52. Additionally, he helps with domestic tasks, including cleaning his room and bathroom, carrying his laundry, and cooking for himself. AR 54 ("My mom does most of the cooking. It's just when I want something different, then I have to do things . . . ."). Also, he spends about two hours throughout the day on the computer and goes on Facebook. AR 55.

Mr. Goucher also testified about his medical history, current conditions, symptoms, and treatment. At the hearing, Mr. Goucher stated that he has sleep apnea. AR 28–29. Mr. Goucher testified that his sleep apnea causes him to "sleep a lot" during the day and "get tired real easy." AR 53. Mr. Goucher "had a sleep study on March 15, 2012, which indicated extremely severe obstructive sleep apnea with an [Apnoea-Hypopnoea Index] of 2.2 with moderate snoring and moderate oxygen desaturation." AR 399.

In June of 2012, sleep medicine physician Dr. Sekhon also diagnosed Mr. Goucher with "extremely severe obstructive sleep apnea and hypertension . . . ." AR 400. Mr. Goucher reported the following conditions to Dr. Sekhon: snoring, observed apneas, difficulty lying flat, dry mouth in the morning, sleeping during the day and snoring and observed apneas at that time, and heavy breathing and panting. *Id.*

2

Dr. Sekhon prescribed Mr. Goucher a CPAP machine to treat his sleep apnea. *Id.* At the hearing, Mr. Goucher testified that he uses a CPAP machine for a two week period and then takes a one week break before continuing to use the CPAP machine again. AR 29. He takes a one week break because otherwise he gets a nasal infection. *Id.* He testified that the CPAP machine helps with his sleep apnea when he uses it, but he seemed to imply that he was more happy with the CPAP machine when he first used it. *Id.* In response to the ALJ's question about the helpfulness of the CPAP machine, Mr. Goucher replied, "Yeah, it helped me. It brought it, it brought it down some, but it was still up there. They were really happy with it when I first was taking it. But now that I've had [infections], it's a little bit higher now." *Id.*

In addition to Mr. Goucher's testimony at the administrative hearing and Dr. Sekhon's medical report, Dr. Katzman – Mr. Goucher's treating physician – also reported that Mr. Goucher suffers from sleep disturbances. AR 379. Dr. Katzman began treating Mr. Goucher in November of 2011 and examined him quarterly from thereon. AR 378. Dr. Katzman treated Mr. Goucher for chronic lower back pain, morbid obesity, and severely arthritic knees. The record indicates that before Mr. Goucher's first visit with Dr. Katzman, Mr. Goucher had MRIs and x-rays of his knees. AR 384. The MRI indicated "extreme arthritis" in each knee. *Id.*

In a medical source statement on April 25, 2012, Dr. Katzman diagnosed Mr. Goucher with chronic back pain and fatigue. *Id.* Dr. Katzman also made findings of bilateral leg swelling, muscle spasm, muscle weakness, abnormal gait, impaired sleep and weight change. *Id.* In the same report, Dr. Katzman assessed Goucher's overall functional capacity, specifically addressing Mr. Goucher's ability to: sit, stand, walk, carry, stoop, crouch, climb stairs, twist, and climb ladders. AR 379. Regarding Mr. Goucher's ability to sit, Dr. Katzman stated that he could sit for three hours total in an eight-hour workday and for one hour at a time before needing to get up. AR 379. He opined that Mr. Goucher could stand for three hours total in an eight-hour workday and for 30 minutes at a time. *Id.* As to walking, Dr. Katzman reported that Mr. Goucher could walk for two hours total in an eight-hour workday and needed to walk every hour for five to ten minutes each time. AR 379–80. Mr. Goucher is capable of carrying less than 10 pounds frequently, 10 pounds occasionally, 20 pounds rarely, but is incapable of carrying 50 pounds. AR 380. Dr. Katzman also opined that Mr.

3

Goucher could rarely stoop, crouch, or climb stairs, but cannot twist or climb ladders at any point. *Id.*

After the first hearing, the ALJ sent Mr. Goucher for an orthopedic consultive evaluation with Dr. Calvin Pon – a specialist in physical medicine and rehabilitation. AR 382–90. Dr. Pon's evaluation consisted of (1) a physical exam of Mr. Goucher and (2) a review of Mr. Goucher's medical records – *e.g.* treatment notes, x-rays, MRI results. *Id*. Regarding functional capacity, Dr. Pon assessed that Mr. Goucher can stand for two hours total in an eight-hour workday and for 20-30 minutes without interruption. AR 386. He can walk for two hours total in an eight-hour workday and for 20-30 minutes at one time without interruption. *Id.* Also, Mr. Goucher can sit for six hours total in an eight-hour workday and for 30 minutes without interruption. *Id.* Dr. Pon also opined that Mr. Goucher could occasionally stoop, crouch, kneel, squat, climb stairs and ladders, and crawl. *Id. Compare* AR 378–81 (finding that Mr. Goucher could rarely stoop, crouch, or climb stairs, and is incapable of twisting or climbing ladders).

B.  ALJ Decision

On December 20, 2012, ALJ Beers found that Mr. Goucher was not disabled. AR 20. The ALJ evaluated Mr. Goucher's claim of disability using the five-step sequential disability evaluation process set out in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), and found in relevant part:

(1) at step one, that Mr. Goucher had not engaged in substantial gainful activity since October 27, 2009, his alleged onset date of disability;

(2) at step two, that Mr. Goucher suffered from the following severe impairments: morbid obesity, history of lumbar fracture, lumbar degenerative disc disease, sleep apnea, bilateral knee arthritis greater on the left, and remote history of right shoulder surgery;

(3) at step three, that these impairments did not equal any of the listed impairments under § 1.04A of 20 C.F.R. pt. 404, subpt. P, app. 1;

(4) at step four, that Mr. Goucher retained, in relevant part, the residual functional capacity ("RFC") to perform a range of light work as follows:

>he can stand and/or walk for four hours during an eight-hour workday; he can sit for six hours; he can occasionally stoop, crouch, kneel, squat, climb stairs and ladders and crawl; and he can lift and carry 10 pounds frequently and 20 pounds occasionally. He requires a sit/stand option for one hour sitting then one hour of either stand and/or walking. He cannot perform overhead reaching with the right dominant upper extremity and he can frequently use bilateral foot controls.

Based on these work restrictions, the ALJ found that Mr. Goucher could not perform his past relevant work;

>   (5)   at step five, that Mr. Goucher was capable of performing other jobs existing in significant numbers in the national economy.

AR 14–20.

On April 30, 2014 the Appeals Council denied Mr. Goucher's request for review. AR 1-6. On July 1, 2014, Mr. Goucher sought judicial review of the ALJ's decision pursuant to Section 205(g) of the Act. 42 U.S.C. § 405(g). Docket No. 1, Complaint. Mr. Goucher argues that judicial review is required because: (1) the ALJ erroneously evaluated treating physician Dr. Katzman's opinions, (2) substantial evidence does not support the ALJ's adverse credibility finding, and (3) the ALJ erroneously omitted any limitations associated with Mr. Goucher's sleep apnea from her residual functional capacity assessment ("RFC") assessment.

## II.   DISCUSSION

A.   Standard of Review

After a final decision by the Commissioner, a petitioner may seek judicial review of that decision by a district court. 42 U.S.C. § 405(g). District courts "shall have the power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a hearing." *Id.* The Commissioner's decision will only be disturbed if the ALJ's findings as to any fact are based on legal error or are not supported by substantial evidence. *Id.*; *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). Substantial evidence is relevant evidence – "more than a scintilla, but less than a preponderance" – that a reasonable mind may accept to support a conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). The court uses "the record as a whole, . . . weighing both the evidence that supports and detracts

from the ALJ's conclusion" to determine if substantial evidence supports a finding. *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). If the evidence supports "more than one rational interpretation," the Court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005).

B.   The ALJ's Step Four Findings

At the fourth step of the sequential evaluation process set out in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the ALJ must assess all the evidence to determine the claimant's RFC, the capacity the claimant has for work despite his or her impairments. 20 C.F.R. § 404.1520. For example, "an ALJ must consider all medical opinion evidence" and the impact of any "medically determinable severe physical or mental impairment(s)" when determining if a claimant is disabled and his RFC. 20 C.F.R. § 404.1527(b); 20 C.F.R. § 404.1529(d). Based on claimant's RFC, the ALJ must determine whether the claimant can perform past relevant work. 20 C.F.R. § 404.1520(f); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010).

1.   The ALJ Failed To State A Specific and Legitimate Reason that Is Supported by Substantial Evidence in the Record for Rejecting Treating Physician Dr. Katzman

Mr. Goucher argues that the ALJ wrongly discredited the treating physician Dr. Katzman's functional capacity assessment of Mr. Goucher. Docket No. 18, at 12. He argues that the "ALJ did not give clear and convincing reasons, specific and legitimate reasons, good reasons, or legally sufficient reasons generally for rejecting Dr. Katzman's opinions more restrictive than her residual functional capacity assessment." *Id.* at 14.

a.   Conflicting Physicians' Opinions

To reject a treating physician's opinion, the ALJ must, in all cases, set forth its reasons for doing so. When an ALJ seeks to reject a treating physician's opinion that is not conflicted, it must lay out clear and convincing reasons for doing so. *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008). However, if there is a conflict between treating and examining physicians' medical reports, then the ALJ must provide specific, legitimate reasons that are based on substantial evidence in the record to reject the treating physician's opinion. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). "The ALJ can meet this burden by setting out a detailed and thorough

summary of the facts and conflicting medical evidence, stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751 (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir.1986)).  However, "[w]here an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir.1996)).

Here, treating physician Dr. Katzman's assessment of claimant's functional capacity conflicts with examining physician Dr. Pon's assessment, because Dr. Katzman and Dr. Pon disagree about Mr. Goucher's degree of impairment.  Dr. Katzman stated that Mr. Goucher could sit for three hours total in an eight-hour workday, whereas Dr. Pon stated that he could sit for a total of six hours in an eight hour workday. AR 379, 386.  Dr. Katzman reported that Mr. Goucher could stand for three hours total in an eight-hour workday, whereas Dr. Pon reported that he could stand for only two hours. *Id.*  Additionally, Dr. Katzman found that Mr. Goucher could *rarely* stoop, crouch, or climb stairs, and *is incapable* of twisting or climbing ladders, whereas Dr. Pon found that Mr. Goucher could *occasionally* stoop, crouch, kneel, squat, climb stairs and ladders, and crawl. AR 380, 388.  In sum, Drs. Katzman and Pon acknowledge that Mr. Goucher has functional limitations, but disagree on the degree of impairment wrought thereby.  Such a disagreement regarding the degree of impairment controverts both opinions and constitutes a conflict. *See Winans*, 853 F.2d at 647 (explaining that a conflict exists when an examining doctor disagrees with a treating doctor regarding the degree of impairment).

In the ALJ's findings regarding Goucher's residual functional capacity, the ALJ adopted the limitations set forth by Dr. Pon and expressly rejected Dr. Katzman's opinion. AR 18.  The question Mr. Goucher raises here is whether the ALJ put forth "specific and legitimate reasons supported by substantial evidence in the record" for doing so. *Magallanes*, 881 F.2d at 755.

        b.    <u>Specific and Legitimate Reason for Rejecting Treating Physician's Opinion</u>

The ALJ points to three pieces of evidence supporting her rejection of Dr. Katzman's opinion regarding the degree of Goucher's disability – (1) the results of imaging studies in the

record; (2) the limited treatment received; and (3) Goucher's ability to engage in "extensive activities." AR 18.

### i. Imaging Studies

In rejecting Dr. Katzman's opinion, the ALJ noted that "imaging studies fail to indicate debilitating pathology . . . ." AR 19. However, the ALJ did not explain how the imaging studies contradict Katzman's opinion, or show that Pon is correct. Here, Pon and Katzman disagree only as to the resulting degree of Goucher's impairment. It is not clear how these imaging studies inform the subtleties of their conflict as to the degree of impairment, and the ALJ did not explain her reasoning as is required. *See Magallanes*, 881 F.2d at 751. Without explication, the mere absence of a visibly "debilitating pathology" is not sufficient evidence that Goucher is not disabled, particularly where there is no evidence that the dispute in question may be resolved by an image study. *See generally Hegarty v. AT & T Umbrella Benefit Plan No. 1*, No. C-14-1976 EMC, 2015 WL 3638542, at *6 (N.D. Cal. June 11, 2015) (explaining that the absence of serious medical conditions does not lessen or defeat the disabling effects of the complained of medical condition). Thus, the Court finds that the absence of imaging evidence was not a legitimate reason for rejecting Katzman's opinion.

### ii. Treatment Record

The ALJ also points to Goucher's sparse record of treatment, noting that Goucher does not take pain medication and has not considered surgery. AR 19. Similar to the issue regarding the imaging studies, it is not clear how this conservative treatment record contradicts Katzman's opinion and favors that of Pon. While conservative treatment records are generally "sufficient to discount a claimant's testimony regarding severity of an impairment," *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007), they are not generally relied upon to discount the opinion of the treating physician. *See generally Sanchez v. Colvin,* 2014 WL 3532997, at *10 (N.D. Cal. July 15, 2014) (rejecting an ALJ's interpretation of treatment records as "routine," in part because the ALJ's interpretation contradicted the records' author – the treating physician).

Here, the record shows that Goucher was examined and prescribed treatment by Dr. Katzman for almost six months. AR 384. While it is unclear from the record why Goucher did not receive

more treatment of his symptoms, this conservative treatment record does not clearly contradict Katzman's medical opinion. *Sanchez,* 2014 WL 3532997 at *10. Moreover, to the extent that the ALJ simply chose to replace her own judgment of the record for that of Dr. Katzman, she committed error in failing to explain why that was appropriate. *Cornejo v. Colvin*, No. C-14-0082 EMC, 2014 WL 5827130, at *8 (N.D. Cal. Nov. 10, 2014) ("A recital of conclusions does not suffice; the ALJ must set forth his own interpretations and explain why they, rather than the doctors', are correct.") (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Hence, the Court finds that, absent further explication, Goucher's treatment record was not a legitimate reason for rejecting Katzman's opinion.

### iii. Daily Activities

Generally, a conflict between a treating doctor's functional assessment of a claimant and evidence of claimant's ability to engage in daily activities may constitute a specific and legitimate reason for rejecting a treating physician's opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600-02 (same).

Here, the ALJ rejected Dr. Katzman's medical opinion on the basis of Mr. Goucher's "wide range of activities." AR 18. The ALJ lists Mr. Goucher's "extensive activities" that allegedly conflict with Dr. Katzman's medical report. AR 18. However, the ALJ did not explain how these activities actually contradict the medical report. Moreover, it is unclear from the face of the record that any of these activities conflict with Dr. Katzman's medical report.

The ALJ points out that Mr. Goucher testified that he drives his car everyday for a mile and takes public transportation. AR 47–48. He also testified that he spends two hours throughout the day on the computer and an hour sitting at the park every day. AR 47–48, 55. The ALJ does not explain how Mr. Goucher's testimony contradicts Dr. Katzman's assessment of Mr. Goucher's ability to sit for three hours total in an eight-hour workday and one hour at a time before needing to stand up. AR 379. Also, when the ALJ explicitly asked Mr. Goucher if he was able to be seated for two consecutive hours when he was on the computer, Mr. Goucher said, "No, . . . I'm moving around all the time. I basically just turn it on, look at it and see what's up and then I just shut it

down . . ." AR 55. On the face of the record, Mr. Goucher's testimony does not contradict with Dr. Katzman's medical assessment of his ability to sit.

Another activity mentioned by the ALJ is Mr. Goucher's ability to carry his laundry. AR 54. The ALJ fails to explain how this daily activity contradicted Dr. Katzman opinion that Mr. Goucher is capable of carrying less than 10 pounds frequently, 10 pounds occasionally, 20 pounds rarely, but is incapable of carrying 50 pounds. AR 380. Although nothing in the record indicates the weight of Mr. Goucher's laundry, it seems likely that it weighed less than 50 pounds. Thus, there is not substantial evidence from the face of the record that Mr. Goucher's ability to carry his laundry conflicts with Dr. Katzman's medical opinion.

Finally, the ALJ mentions Mr. Goucher's ability to clean his room and bathroom. AR 54. Once again, the ALJ did not explain how this daily activity contradicts any of Dr. Katzman's medical opinion. Moreover, it is unclear from the face of the record how this daily activity contradicts any of Dr. Katzman's medical opinions. Dr. Katzman stated that Mr. Goucher can walk for two hours total in an eight-hour workday and can walk for five to ten minutes each time. AR 380. Also, he stated that Mr. Goucher can stand for a total of three hours in an eight-hour workday and 30 minutes at a time before needing to sit down. AR 379. However, the ALJ did not show that there was substantial evidence in the record to demonstrate that Mr. Goucher's cleaning required him to walk for more than two hours or stand for more than three hours in a day. Thus, Mr. Goucher's ability to clean his room and bathroom does not constitute a specific and legitimate reason to reject Dr. Katzman's assessment of his ability to walk or stand.

Thus, the ALJ erred by rejecting Dr. Katzman's medical opinion because there is not substantial evidence in the record to support a contradiction between Mr. Goucher's activities and Dr. Katzman's opinion. *See Ghanim*, 763 F.3d at 1162 (finding that no conflict existed between claimant's daily activities and his treating physician's functional assessment); *see also Magallanes*, 881 F.2d at 756 (". . . claimant need not vegetate in a dark room or be a total basket case to be found unable to engage in substantial gainful activity.") (quotation marks and citations omitted); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (relevant inquiry is whether "a claimant is able to spend a

1  substantial part of his day engaged in pursuits involving the performance of physical functions that
2  are transferable to a work setting").

3     2.   The ALJ Erred by Failing to Provide Clear and Convincing Reasons for Discounting
4          Mr. Goucher's Credibility

5     Next, Mr. Goucher argues that the ALJ failed to provide a "clear and convincing" reason for
6  finding Mr. Goucher incredible. Docket 18, at 16–17. Specifically, Mr. Goucher argues that the
7  ALJ wrongly found that his daily activities conflicted with his testimony about his subjective pain,
8  and that the ALJ did not explain how these activities undermined his credibility. *Id.* Further, Mr.
9  Goucher argues that the activities did not prove that he could perform the wide range of full time
10 "light work." *Id.*

11     In order to find a claimant incredible, the ALJ must put forth "clear and convincing" reasons
12 for doing so if: (1) the alleged disability is reasonable given the objective medical evidence, and (2)
13 there is no evidence of malingering. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).
14 The Ninth Circuit has found that an ALJ can present daily activities that contradict claimant's
15 testimony as a specific, clear and convincing reason for discrediting a claimant's credibility. *See*
16 *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). However, the Ninth Circuit has
17 "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are
18 inconsistent with testimony about pain, because impairments that would unquestionably preclude
19 work and all the pressures of a workplace environment will often be consistent with doing more than
20 merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014).

21     Here, the ALJ found objective medical evidence, including Dr. Katzman and Dr. Pon's
22 medical assessments, of Mr. Goucher's impairments that could reasonably produce pain or other
23 symptoms. AR 17–18. For example, "Dr. Pon diagnosed chronic low back pain, chronic left knee
24 pain, and right knee pain - probable degenerative arthritis." *Id.* The ALJ points to Dr. Katzman's
25 findings of "symptoms of chronic severe low back pain and fatigue" and 2011 x-rays that "showed
26 tricompartmental osteoarthritis" in Goucher's left knee and "moderate degenerative arthritis of both
27 knees." *Id.* The ALJ also references a 2007 diagnosis for "mechanical low back pain secondary to
28 degenerative spondylolisthesis." AR 16.

As there was no finding of malingering, the ALJ was required to provide a specific, clear and convincing reason for discounting Mr. Goucher's credibility. The ALJ found that Mr. Goucher's credibility was "undermined by the extensive activities he is able to engage in." AR 18. The ALJ uses the same list of Mr. Goucher's activities to reject both Dr. Katzman's medical opinion and Mr. Goucher's testimony. *Id.* Like the ALJ's rejection of Dr. Katzman's medical opinion, the ALJ also discounted Mr. Goucher's testimony without presenting any evidence of a conflict between Mr. Goucher's daily activities and his testimony about his pain or symptoms. Since such a conflict is unclear from the face of the record and the ALJ did not elaborate, this reason is not clear and convincing. Thus, the ALJ found Mr. Goucher incredible without setting forth a clear and convincing reason.

> 3. <u>The ALJ Failure to Account for Any Limitation Caused by Mr. Goucher's Sleep Apnea in Her RFC Determination Was an Error</u>

Mr. Goucher argues that the ALJ erred because she failed to account for his severe sleep apnea in her RFC assessment. Docket 18, at 9–11. Mr. Goucher argues that the RFC should have included a limitation to account for sleep apnea, such as "being off track due to somnolence or drowsiness." *Id.* at 9–10.

The Ninth Circuit has held that an ALJ is not obligated to discuss all evidence in the record. *See Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir.2003); *Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir.1984). However, the Ninth Circuit has also held that a RFC "that fails to take into account a claimant's limitations is defective." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (stating that the ALJ must consider all relevant evidence in the record in order to determine a claimant's RFC).

Here, the ALJ did not include the limitations caused by Mr. Goucher's sleep apnea in her RFC determination. Yet, the record included Dr. Sekhon diagnosis of Mr. Goucher's "extremely severe obstructive sleep apnea and hypertension . . . ." AR 400. Mr. Goucher reported the following associated conditions to Dr. Sekhon: snoring, observed apneas, difficulty lying flat, dry mouth in the morning, sleeping during the day and snoring and observed apneas at that time, and heavy breathing and panting. *Id.* Additionally, the ALJ acknowledged that Mr. Goucher's sleep apnea is a severe

impairment. AR 15. Because Mr. Goucher's sleep apnea is relevant evidence, and a severe impairment as acknowledged by the ALJ herself, the ALJ erred by failing to account for it in her RFC determination. *See Robbins*, 466 F.3d at 883.

### III. CONCLUSION

Upon finding error in an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *INS v. Ventura*, 537 U.S. 12, 16 (2002) (internal citations omitted). Thus, remand, not an award of benefits, is the proper course of action in this case. *See Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1136 (9th Cir. 2011) (remand for automatic payment for benefits is inappropriate unless the record clearly shows that the claimant "is, in fact, disabled.").

Accordingly, Mr. Goucher's motion for remand for further administrative proceedings is **GRANTED** and the Commissioner's motion for summary judgment is **DENIED**.

This order disposes of Docket Nos 18 and 22.

IT IS SO ORDERED.

Dated: July 2, 2015

_____
EDWARD M. CHEN
United States District Judge