UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY D. GOUCHER, JR., <br><br> Plaintiff, <br><br> v. <br><br> CAROLYN W. COLVIN, <br><br> Defendant. | Case No. 14-cv-03009-EMC <br><br> **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S COUNSEL'S MOTION FOR AWARD OF ATTORNEY'S FEES** <br><br> Docket No. 33 |

Plaintiff Jerry D. Goucher, Jr. initiated this social security case in 2014. In July 2015, the Court granted Mr. Goucher's motion for summary judgment and denied the government's. On remand to the Social Security Administration ("SSA"), Mr. Goucher prevailed and was awarded disability benefits, including but not limited to past-due benefits.

Currently pending before the Court is a motion filed by Mr. Goucher's law firm, Sackett & Associates ("Sackett"), in which it seeks attorney's fees pursuant to 42 U.S.C. § 406(b). Sackett acknowledges that any award under § 406(b) would be offset by the $6,000 EAJA award that the Court previously awarded pursuant to stipulation between the parties (*i.e.*, Sackett would get the § 406(b) fee award and Mr. Goucher would get the $6,000 EAJA fee award).[1] *See* Docket Nos. 31-32 (stipulation and order regarding EAJA fees).

Because, ultimately, any § 406(b) fee award will be paid out of Mr. Goucher's pocket,

---

[1] *See Gisbrecht v. Barnhart*, 535 U.S. 789, 796 (2002) ("Congress harmonized fees payable *by the Government* under EAJA with fees payable under § 406(b) *out of the claimant's past-due Social Security benefits* in this manner: Fee awards may be made under both prescriptions, but the claimant's attorney must 'refund to the claimant the amount of the smaller fee.' 'Thus, an EAJA award offsets an award under Section 406(b), so that the [amount of the total past-due benefits the claimant actually receives] will be increased by the . . . EAJA award up to the point the claimant receives 100 percent of the past-due benefits.'") (emphasis added).

1  Sackett served a copy of the fee motion on Mr. Goucher. *See* Docket No. 33-2 (proof of service). Mr. Goucher has not filed any opposition to Sackett's fee request. The government has filed a response in which it states that, as a formal matter, it "takes no position on the reasonableness of the [fee] request." Resp. at 5.

Shortly before the hearing on the matter, Sackett asked the Court to rule on its motion for fees without oral argument. The Court granted that request and now **GRANTS** in part and **DENIES** in part Sackett's motion for fees.

## I.   FACTUAL & PROCEDURAL BACKGROUND

As indicated above, Mr. Goucher prevailed in his lawsuit against the SSA, obtaining an order from this Court remanding to the agency for further proceedings. On remand to the agency, Mr. Goucher prevailed again and was found disabled. *See* Ex. A (ALJ decision, dated May 17, 2017) (stating that, "[b]ased on the application for a period of disability and disability insurance benefits protectively filed on May 9, 2011, the claimant has been disabled under sections 216(i) and 223(d) of the Social Security Act beginning on November 1, 2011").

Mr. Goucher was awarded, *inter alia*, past-due benefits. Sackett represents that the amount of past-due benefits awarded was $100,649. *See* Ex. B (notice of award) (providing that "you are entitled to monthly disability benefits from Social Security beginning April 2012"; showing the monthly benefit amount, with periodic adjustments for cost of living). Neither Mr. Goucher nor the government contests the amount of past-due benefits.

Mr. Goucher and Sackett had a fee agreement which provided, in relevant part as follows:

> IF I RECEIVE A FAVORABLE DECISION AT ANY TIME FOLLOWING AN UNFAVORABLE OR PARTIALLY FAVORABLE DECISION EITHER AT ANY ADMINISTRATIVE LEVEL OR AT THE JUDICIAL LEVEL:
>
> I will pay SACKETT . . . , subject to the approval of the Social Security Administration for representation at the administrative level, and by the district or circuit court for representation at the judicial level, a fee no greater than 25% of the past-due benefits owed to me . . . .

Ex. C (Fee Agmt. at 1).

Here, as noted above, past-due benefits amounted to $100,649. Twenty-five percent of the

2

past-due benefits is $25,162.25, which is the amount of the fee request now being made by Sackett. *See also* Ex. B (notice of award) (stating that, "[b]ased on the law, we must withhold part of past-due benefits of pay an appointed representative[;] [w]e cannot withhold more than 25% of past-due benefits to pay an authorized fee" and, here, "[w]e withheld $25,162.25"). Sackett notes that, although this is the gross fee being requested, "[Mr.] Goucher would be credited for $6,000.00" because of the EAJA fee award; "[t]his would result in [Mr. Goucher] paying Sackett a net fee . . . for $19,162.25." Mot. at 2.

Sackett represents that it incurred 30.90 attorney hours litigating Mr. Goucher's case before this Court. *See* Ex. E (itemization of services rendered). Thus, if the Court awards the full fee request, Sackett would be paid a de facto hourly rate of $814.31 (*i.e.*, $25,162.25 ÷ 30.9 hours).[2]

## II. DISCUSSION

Sackett's fee request of $25,162.25 is made pursuant to § 406(b). Section 406(b) provides in relevant part as follows:

> Whenever a court renders a judgment favorable to a claimant under this title [ 42 U.S.C. § 401 *et seq.*] who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment . . . .

42 U.S.C. § 406(b)(1)(A).

In *Gisbrecht*, 535 U.S. at 789, the Supreme Court addressed an issue that had "sharply divided" the circuit courts with respect to § 406(b) – *i.e.*,

> [w]hat is the appropriate starting point for judicial determinations of a "reasonable fee for [representation before the court"]? Is the contingent-fee agreement between claimant and counsel, if not in excess of 25% of past-due benefits, presumptively reasonable? Or should courts being with a lodestar calculation . . . of the kind we have approved under statutes that shift the obligation to pay to the loser in the litigation?

---

[2] It appears that Sackett's paralegal spent another 4.95 hours on the case. *See* Ex. E (itemization of services rendered). However, Sackett does not count these hours toward its request for fees, and therefore the Court shall not either.

3

*Id.* at 793.

The Supreme Court held that Congress "designed § 406(b) to control, not to displace, fee agreements between Social Security benefits claimants and their counsel," and, because the lower court had rested its review on "lodestar calculations" and "reject[ed] the primacy of lawful attorney-client fee agreements," the Court reversed the judgment below. *Id.*

The Court went on to explain that

> § 406(b) does not displace contingent-fee agreements as the primary means by which fees are set for successfully representing Social Security benefits claimants in court. Rather, § 406(b) calls for court review of such arrangements as an independent check, to assure that they yield reasonable results in particular cases. Congress has provided one boundary line: Agreements are unenforceable to the extent that they provide for fees exceeding 25 percent of the past-due benefits. *Within the 25 percent boundary, . . . the attorney for the successful claimant must show that the fee sought is reasonable for the services rendered.*

*Id.* at 807 (emphasis added).

The Supreme Court acknowledged that courts

> have appropriately reduced the attorney's recovery based on the character of the representation and the results the representative achieved. If the attorney is responsible for delay, for example, a reduction is in order so that the attorney will not profit from the accumulation of benefits during the pendency of the case in court. *If the benefits are large in comparison to the amount of time counsel spent on the case, a downward adjustment is similarly in order.* In this regard, the court may require the claimant's attorney to submit . . . as an aid to the court's assessment of the reasonableness of the fee yielded by the fee agreement[,] a record of the hours spent representing the claimant and a statement of the lawyer's normal hourly billing charge for *non*contingent-fee cases.

*Id.* at 808 (emphasis added).

In the instant case, Sackett is not asking for fees that constitute more than 25 percent of Mr. Goucher's past-due benefits. That being the case, the question for the Court is whether the full 25 percent of the past-due benefits is reasonable under the circumstances. And here, the Court's main concern is whether there should be a downward adjustment in fees because the past-due benefits (over $100,000) are large compared to the amount of time Sackett spent on the case (about 31 hours). As noted above, the de facto hourly rate under these facts is about $814. This is

4

1  a high hourly rate, particularly in a Social Security case.

2  In defense of the fee request, Sackett points out that a de facto hourly rate of more than
3  $800 has been approved in some Social Security cases. *See* Mot. at 10 n.53 (citing cases). But
4  none of the cases cited by Sackett involves Sackett or is a Northern District of California case.
5  Furthermore, while Sackett does cite to one Ninth Circuit opinion (where the fee awards translated
6  to de facto hourly rates of $519, $875, and $902), *see Crawford v. Astrue*, 586 F.3d 1142, 1153
7  (9th Cir. 2009) (Clifton, J., dissenting), Sackett has failed to demonstrate with any specificity how
8  *Crawford* – or any of the district court cases it has cited – are similar or analogous to the instant
9  case, thus warranting a similar de facto hourly rate. *See id.* (majority opinion) (stating that a
10 "district court should look at the complexity and risk involved in the specific case at issue to
11 determine how much risk the firm assumed in taking the case"). In addition, *Crawford* is
12 distinguishable because, there, counsel actually reduced their fees "substantially from the
13 allowable 25%."[3] *Id.* at 1152.

14 Sackett's other arguments in defense of a $814 de facto hourly rate are not persuasive. For
15 example, even assuming that Sackett's noncontingent hourly rate is $350-400,[4] the Court is not
16 persuaded that the risk associated with this specific case justifies a multiplier of 2. Although
17 Sackett claims that Mr. Goucher's case in particular involved a significant risk of loss, there are no
18 concrete facts to back up that claim. Sackett's argument is largely generic and generalized. *See*
19 Mot. at 9.

---

[3] The same is true with respect to several of the district court cases cited by Sackett. *See, e.g.*, *Knudsen v. Colvin*, No. CV 11-05093-JEM, 2015 WL 4205319, at *2 (C.D. Cal. July 10, 2015) (in case where de facto hourly rate was $973.78, noting that the fee award "requested is approximately 20% of Plaintiff's benefits which is less than the 25 percent cap imposed by § 406(b)"); *Quinnin v. Colvin*, No. 1:12-CV-01133-SI, 2013 WL 5786988, at *1, 4 (D. Or. Oct. 28, 2013) (in case where counsel asked for 22 percent of past-due benefits, ultimately awarding only 15 percent, resulting in a de facto hourly rate of $1,240); *Ali v. Comm'r, Soc. Sec. Admin.*, No. 3:10-CV-01232-CL, 2013 WL 3819867, at *3 (D. Or. July 21, 2013) (in case where de facto hourly rate was $1,000, noting that "[c]ounsel has already adjusted downward the percentage of fees he seeks from those provided for in the valid contingent-fee agreement, from 25 percent to 14 percent"); *Daniel v. Astrue*, No. EDCV 04-01188-MAN, 2009 WL 1941632, at *2 (C.D. Cal. July 2, 2009) (noting that, "[a]lthough the de facto hourly rate of plaintiff's counsel's services amounts to $1,491.25,4 counsel seeks only approximately 18% of plaintiff's past-due benefits, rather than the 25% to which counsel is entitled under the Agreement").

[4] There is no supporting declaration from Sackett to support this claimed noncontingent rate.

5

Implicitly recognizing such, Sackett contends that the de facto hourly rate should really be $620 "after the credit [Mr.] Goucher [gets] for EAJA fees," Mot. at 10; however, there is no principled reason to exclude the EAJA credit. *See, e.g.*, *Stewart v. Astrue*, No. C 05-2317 PVT, 2010 U.S. Dist. LEXIS 35936, at *3 (N.D. Cal. Mar. 15, 2010) ("Plaintiff's counsel's suggestion that the court should base its reasonableness determination on just $ 11,765.89 of the award [*i.e.*, taking out the EAJA award] ignores the reality of how much money he will actually have received for the court case."). Furthermore, even if the Court were to assume a de facto hourly rate of $620, that would not automatically make the rate reasonable. Although Sackett cites a chart indicating that a Bay Area lawyer with more than 30 years of experience can charge $630 per hour as a noncontingent rate, *see* Mot. at 11 & Ex. F (chart), the $630 hourly rate is commanded by the top ninth decile only and it is not clear that Sackett falls into that group. The average noncontingent hourly rate is only $480.

Another consideration for the Court is whether Sackett has ever actually been awarded a de facto hourly rate in the $814 neighborhood. The Court was not able to locate any such case; nor has Sackett cited to any such case. There were two cases (from 2010 and 2006) where Sackett was awarded a de facto hourly rate in the $600 range[5] but most cases (from 2003 through 2016) were in the $300-400 range.[6]

Taking into account all of the above, the Court finds that Sackett has failed to show that, "[w]ithin the 25 boundary" permitted by § 406(b), "the fee sought is reasonable for the services rendered." *Gisbrecht*, 535 U.S. at 807. Instead of a de facto hourly rate of $814, the Court concludes that a de facto hourly rate of $600 is reasonable. This sum constitutes a multiplier of

---

[5] *See Stewart*, 2010 U.S. Dist. LEXIS 35936, at *3-4 (de facto hourly rate of $600); *Jakob v. Barnhart*, No. C 00-20763 JF, 2006 U.S. Dist. LEXIS 93679, at *4 (N.D. Cal. Dec. 14, 2006) (de facto hourly rate of $603.28).

[6] *See, e.g.*, *Conner v. Colvin*, No. 13-cv-03324-KAW, 2016 U.S. Dist. LEXIS 137188, at *7-8 (N.D. Cal. Oct. 3, 2016) (de facto hourly rate of $360.32); *Zutis v. Colvin*, No. C 12-01897 WHA, 2015 U.S. Dist. LEXIS 77979, at *4-5 (N.D. Cal. June 16, 2015) (de facto hourly rate of $320.30); *Sizelove v. Astrue*, No. 5:05-cv-04533 JF, 2012 U.S. Dist. LEXIS 120735, at *4 (N.D. Cal. Aug. 24, 2012) (de facto hourly rate of $407.64); *Lopez v. Astrue*, No. C 07-02649 PJH, 2011 U.S. Dist. LEXIS 7448, at *9 (N.D. Cal. Jan. 20, 2011) (de facto hourly rate of $441.79); *Panzica v. Comm'r of Soc. Sec.*, No. C 06-6476, 2010 U.S. Dist. LEXIS 28254, at *4 (N.D. Cal. Mar. 16, 2010) (de facto hourly rate of $330).

6

1.5 assuming a noncontingent hourly rate of $400. This is a fair multiplier that accounts for the risk to Sackett in taking on Mr. Goucher's specific case, including but not limited to the specific medical impairments Mr. Goucher had and treatment therefor.

With a de facto hourly rate of $600 and 30.9 hours, the attorney's fee award to be paid out of Mr. Goucher's past-due benefits is $18,540.

### III. CONCLUSOIN

For the foregoing reasons, the Court grants in part and denies in part Sackett's motion for attorney's fees. The Court awards $18,540 as § 406(b) attorney's fees. The $6,000 EAJA award shall be refunded to Mr. Goucher.

This order disposes of Docket No. 33.

**IT IS SO ORDERED**.

Dated: August 9, 2017

_____
EDWARD M. CHEN
United States District Judge